Council, if you intend to keep any time for rebuttal, please tell me now. I would like to keep about five minutes. Five minutes. Okay. May it please the Court, my name is Barry Levenstam and I'm appearing today on behalf of CRST, the appellant. Because the district court did not explain why it dismissed count one, which is the primary count I want to discuss this morning, its reasons could have been. Count one is intentional interference with contractual relationships. Yes. Thank you, Your Honor. Its reasons could have been either, both, or neither of Werner's asserted grounds. But assuming that it was one or the other or both, both of those grounds are erroneous as a matter of law and the decision should be reversed. First, Werner argued below that it's necessary to allege an independent wrongdoing in order to state a claim for tortious interference with contract. And under the California Supreme Court's decision in Qualamain v. Stewart title, that is simply incorrect as a matter of California law. The Court there stated that wrongfulness independent of the inducement to breach is not an element of tortious interference with contract. And further, that a tortious interference with an existing contract is a wrong in and of itself. So negligent interference with contractual relationships states the cause of action? Yes. Right. Both intentional and negligent. The second basis for Werner's argument was that the CRST employment contract was at will. There again, a review of the contract and the pleading demonstrates that that is not the case. The CRST contracts are term contracts. They set forth a specific term of one year. They are not at will. And they are, in the Qualamain court's language, worthy of the protection of California's tortious interference with contract law. I have a question that the record doesn't answer for me. Perhaps you will. Werner is a Nebraska corporation. And why did you sue in California? One of the contracts based on California law, and I believe had the Ryan contract, Ryan Spencer's contract, has a California, I think, a form provision as well as a choice of law. Why is that relevant to suing in California, given that that contract is between employer and employee and this is an action by a third party? Why is the choice of law provision in the employer-employee contract relevant? That's a good question, Your Honor. But the subject matter of the suit is really the contract, even though we're suing over the tortious interference with that contract. And the choice of law question was also not really briefed. Why is it correct, or why was it correct for the district court to apply California law to this issue? Well, to the issue of whether the contract is at will or a term contract, I believe that is governed by the choice of law provision of the contract, and that is an underlying question. I mean, the court sitting in diversity applies California choice of law and looks at the employment relationship. Why would they be bound by what the contract said for a choice of law provision? My understanding is that California honors the choice of law provision selection in contracts. And, you know, these weren't issues that were fleshed out at all below. And, in part, that's because the case was dismissed so summarily. We never really got to those issues. And so this Court shouldn't be concerned about which law applies to the substance of the claims? I think, for the time being, we are the question of at will or term is a question that, under the contract, is by California law. And, in fact, that's the analysis that the district court in the Western District of Oklahoma applied when he addressed a very similar situation in CRST's case against a different competitor, Hunt. And under the law of California, this qualifies as a term contract, as a one-year term. And I think to explain, to really understand this, you have to understand the contract, which is a part of the record because it was attached. These contracts, the employment contract, is, in a sense, front-loaded in terms of the consideration. That is to say that when CRST goes looking for truck drivers in a time, which we have now, have had for quite some time, of severe shortage in truck drivers, they go to recruit truck drivers. They look for people who are not currently serving as truck drivers, people who could use a better job. And their recruitment program looks for these people. Then CRST will fund their travel, their tuition, and send them to truck driving schools and enable them, over a period of three weeks or more, to earn a commercial driver's license so that it is bringing new truck drivers in. After paying for travel, lodging, and tuition, and after these people graduate and get their CDL, then CRST provides them with a three- to four-day orientation program. And even at this point, they're not really ready to become full-fledged truck drivers. So there is another month period of CRST's training program in which these newly graduated licensed commercial drivers drive with a lead truck driver, an experienced CRST truck driver. And during that time as well, CRST is incurring expenses because its truck is not as productive as it would be if it were simply engaged in the business of trucking and not serving as a training vehicle. So there is a very substantial upfront amount of consideration that CRST provides to these truck drivers. And what was happening was, once the training period was finally over, Werner or other companies would come and hire these truck drivers away because the backside of the front-loading of consideration is that CRST pays them for the remaining period of the contract a little bit less than market so that it can recoup some of its costs. And Werner, not having a training program to fund, can pay more for that first year. So what's happening is we're training people, putting them on the road at our own expense, and then when they get out on the road, our competitors are taking them away from us before we can recoup. Now, the contract itself specifically states in paragraph three that once this initial recoupment period in these contracts, it's a year, is over, the relationship is at will. It says that expressly. Now, the question here really is whether the fact that CRST reserves to itself the right to dismiss without cause but with the circumstance that it cannot recoup the $3,600 essentially liquidated damage provision, is a sufficient limitation to take this out of being an illusory contract and make it a term contract. And plainly, that is. That's what Judge Friot found in the Western District, and he took the time to not only study the papers and pleadings, but he had a two-day evidentiary hearing in a preliminary injunction proceeding in which he ultimately granted CRST a preliminary injunction. Assuming that there is interference with contract claim, how can that be a predicate for the prospective economic advantage interference with that claim? Doesn't that just collapse the two claims together? Well, the interference with prospective advantage claim under the Reeves case from the California Supreme Court would apply if there were only an at-will relationship. It's an alternative pleading. But because, as I'm arguing, we believe there is a term contract here, it is a contract and the claim that's really appropriate is our primary claim, tortious interference with contract. Should we affirm Judge Reel's dismissal of the interference with prospective economic advantage claim? Well, if you reverse him on the contract claim and rule for us, then I don't think we need the tortious interference with prospective advantage claim, because you would have determined that these are term contracts and deserving of the protection of the tortious interference with contract law. Well, but if we do find that there is a violation of contractual There's a sufficient allegation of contractual interference. We are at the dismissal. Doesn't that then become a wrongful act under 17200 of the Business and Professions Code? And doesn't that then become a wrongful act which is sufficient to sustain an intentional interference with prospective economic advantage? Well, yes. We agree with you all the way down the line as you propose. Are you making a judicial admission that if we sustain pardon me, if we reverse the order dismissing count one, we can then affirm the dismissal of the unfair competition claim and the prospective economic advantage claim? No, Your Honor. Certainly not unfair competition. And even as the alternative claim, we would like to clear up the record and perhaps give us less work. No, no. But I just, it's specifically, it is an alternative claim. And if there is no, we find there is no intentional interference with contract claim, is there any basis for the 17200 claim? Yes. Yes. I believe that there is. In the CELTEC case, the California Supreme Court pointed out that the unlawful, unfair, and fraudulent language of that statute is intended to be disjunctive. And that each one of those is an individual basis for proceeding under the statute. And in particular, CELTEC held with respect to the unfairness, which is one of the places that we rest our, this claim on. And this is count three. The court held that if an act significantly harms or threatens competition, that you can find an unfair violation of the UCL. And do you allege any unfairness to competition as opposed to yourself? Yes. Well, yes. This is, we believe that the free rider issue that is posed by Werner hiring after we've invested all this money in these people and training them, is a, poses a risk to competition as well as a risk to us because it's going to make our driver training program economically unfeasible. And when that happens, that's going to cut off a significant source of new truck drivers to the truck driving market. And when there's new truck drivers, remember there's a shortage of them now, but when the new truck driver flow stops, that's going to drive the cost of truckers and hence trucking up, and that's going to harm consumers. And that is a potential threat posed by the free rider that we think constitutes an unfair business practice. In terms of the tortious interference with contract, Werner relies in part on the older Newelson case to say that Section 2924 provides the only basis for dismissing an employee in a term contract. And that's not what the statute says. There's no California state court that has ever ruled that way, nor to my knowledge has any, has this court issued a similar decision. Newelson was victim, of course, because the court held it didn't really think this was a contract for employment so much as a consulting contract anyway. But the Guz case from the California Supreme Court in the year 2000, although it dealt with an implied contract claim, contained a lot of very important discussion on the nature of contracts and particularly termination provisions. The court there noted that the employment relationship is fundamentally a contractual relationship and specifically stated that the California statutes do not prevent the parties from agreeing to any limitation otherwise lawful on an employer's termination rights. And so we have, CRST has invoked two types of limitations. You're coming close to your five minutes, but one question. Do you appeal the award of attorney's fees and the dismissal of your fifth count? We do not appeal from the dismissal of the fifth count. We do appeal from the award of attorney's fees. I'd like to rely on the arguments that are set forth in my brief on that, but if you have any questions, I'd be happy to answer them. All right, thank you. But getting back to this, one of these limitations was the four cause limitation, and the other was the five minutes. Okay, let me just sum up very quickly. And the other was this financial limitation of the $3,600, forfeitures of $3,600. And if you look at GOOS, it says that good cause is, quote, one example of a contractual departure from at-will status, but not the only example. It says the parties are free to define their relationship, including the terms on which the relationship can be ended as they wish. And they can reach any contrary understanding, otherwise lawful concerning the term of employment or termination. I guess with that, I'd like to reserve the rest of my time. Thank you. Good morning, Your Honors. May it please the Court, Robert Watzman for Urban Coinage, on behalf of the Respondent Warner Enterprises, Inc. Your Honors, it's very clear that the district court properly dismissed all of the intentional and tort claims. The contracts that are attached to the first amended complaint, and CRST does not dispute and cannot dispute that they're written, that the interpretation of those contracts is a question of law for the court. The ATEL case that we cited in our brief specifically says that. So they tried to make a distinction between the first claim for interference with contractual relations, as opposed to the fourth claims for interference with prospective business relationships. But that distinction is of no merit. Since the contracts were attached to the complaint, the district court had them for review. The district court could look at them and analyze whether or not the first claim, even though it purports in the pleading to State, a cause of action for first, you know, for interference with contractual relations, is really an at-will contract that's being interfered with. And that's exactly what the district court did in this case. Kennedy. Well, how do we know that? Waxman. Pardon me? Kennedy. How do we know that's what the district court did? Waxman. Well, the reason that you ---- Kennedy. He doesn't say that in his order. Waxman. Pardon me? Kennedy. He doesn't say that in his order, does he? Waxman. Well, he doesn't say that in his order, but those were the only arguments that were advanced in the moving papers when we submitted our moving papers, and those were the only arguments that were in advance in opposition to those moving papers. So the fact of the matter is that's the exact reason. There is no other reason. And the fact of the matter is if you look at the contracts that were attached to the complaint, each contract has the two salient provisions. First, that the CRST has the absolute right, the absolute right, to terminate the truck drivers at any time without reason, without cause. And without recoupment. And that's true. And I'll get to that in a minute. The second point, and equally poignant, is that those contracts also say that CRST has the absolute right to change the compensation of the employee at any time in its sole discretion. So let me posit the following situation to you. The CRST could have lured truck drivers who hadn't been in the business before into its employment with a promise that they would pay for driving school. And at the same time, they would say, look, we pay truck drivers, let's say just pick a number out of it. Well, it's that and it's the other as well. Let me say this. CRST, the other provision in the employment agreement says, CRST has the absolute right to set the compensation of these drivers at any time and at any level. But where is that in the contract? I don't remember seeing that. That's in the compensation provisions in the contract. And so the fact of the matter is CRST could, in effect, say to these people who have never been in the truck driving industry, we'll pay for your truck driving school. You'll come to work for us. Here's what we pay truck drivers. But the instant that they get to CRST, CRST says, guess what? You sign this employment contract. And the employment contract says we reserve their absolute right and our discretion to tell you what compensation you're going to make. We can raise it. Whether it's a term contract or not. Well, it doesn't go to the fact that it's a term contract. But what it does go to is the fact that what CRST is telling these drivers in order to get them to come there, is that you come at a certain wage level. You have an employment contract supposedly, ostensibly for one year. But that's illusory because we can tell you we're going to trap you into this employment contract for one year. You can't work for anybody else ever in any industry. And at the same time, we're going to be able to tell you you were going to work at $100 an hour, but since our contract says we can lower your compensation at any time. Where does it say you can't work in any other industry? I don't remember. Because the one-year employment agreement says that the truck driver is bound supposedly to work for CRST for a single year. For that year. Pardon me? For that year. For that year. So if a truck driver decides I want to leave CRST to go somewhere else, what does CRST do? CRST notifies the prospective employer that CRST's contract is for a year or ostensibly a year, and then says to the proverbial employer, whether it's truck driving or some other industry, guess what? You can't hire this guy because he's under employment contract with us for an entire year. So in effect. That's not for the rest of his career, right? Not for the rest of his career. But it's for that year, and it's for that year in which CRST at the same time can say to the truck driver, when are you going to deployment your compensation? Well, we told you it was going to be $100 an hour, but now it's going to be $10 an hour because that's the right we reserved in that employment contract. And that is inherently unfair. But let's get to that. I've been reading while you've been speaking of Ryan Spencer's contract, page 15 of the AR. Right. Would you be so kind as to indicate what paragraph establishes the employer's or CRST's undiluted discretion to change compensation? I will. Let me get my. I see the student understands and agrees the student will not be paid any compensation until such time as CRST driver employment contract is executed by the student. Let me get the. It's there. Enter him to the appropriate page. If you look at paragraph 5 of that agreement, and if you look at the last sentence of paragraph 5, it specifically says, in addition, CRST will pay employee the wages, benefits, et cetera, et cetera, et cetera, set forth in the handbook. And then. I must be reading something different. I'm reading paragraph 5, phase 1 expenses. Is that a different contract? That is. I'm looking at the Ryan Spencer employment contract, which is at page 30 of the record that you have before you. I was reading the student contract. Okay. All right. Okay. Look at the last sentence of that paragraph, paragraph 5, and you'll see that the first couple sentences say CRST will pay according to its handbook, et cetera. The last sentence says CRST may unilaterally change at any time by any written amendment to the terms and conditions of the compensation set forth in the handbook, and the employee hereby consents to all such amendments and agreements that such amendments shall be binding upon the employee. So they are telling these people, go to truck driving school. We'll employ you. We'll employ you. Truck drivers make all these high wages. They get to CRST, and CRST says, oh, boy, we signed up an employment contract that says we can raise it, lower it, do whatever we want. So all of a sudden, instead of making $100 an hour, they're making $10 an hour. And not only that, they're bound for an entire year, and not only that, supposedly, and not only that, they can't go anywhere else. So in effect, CRST is forcing them to stay there. Kennedy, I'm sorry. Why can't they go anywhere else? Why? Because if CRST's theory is correct, that these people are bound for an entire year, no other employer can hire them without being sued by CRST for interference with contractual relations. This means they have to change the wages for everybody in the handbook, don't they? They can't just change it for Ryan Spencer. They may. Isn't that what it says? Well, it doesn't say. Does it say they can do it selectively for one employee and not another? It doesn't say it can selectively do it for one employee or another, but the fact of the matter is that it could but it certainly can do it for Ryan Spencer, and it can certainly do it for the others. It's only if it amends the terms and conditions of the compensation set forth in the handbook. Okay. But even so, even so. Does the handbook apply to all of the employees? That I don't know because that's not before us. But what I can. It does. It says, in addition, CRST will pay employees the wages, benefits, and other compensation set forth in the capital H handbook. I imagine that's for all the employees, isn't it? I don't want to guess, but I will say this. Come on. But I will say. I will say. Go to another argument. Okay. Let's get to the real meat of the argument here, which is the fact of the matter is that California divides employment into two distinct classifications. By the way, what's your response to the question Judge Ikuda asked your opponent about how did you come to apply California law in this case? Okay. The answer to the contract is from Iowa, right? Yes, that's true. The answer to the contract is this. The question is this. In the district court below, both parties briefed and only briefed California law. So just sort of by default, huh? And the answer is in the Ninth Circuit there are a number of cases, and we've cited them in their brief, that where the only law that's briefed below is California law, then California law applies on this appeal. And that the parties are not going to do it. So in answer to my question, the way California law came to be applied in this case is just simply by default. Both sides just signed the California law and nothing else. Default and the fact of the matter is if another party wants to apply California law, they're required to bring non-California law. They're required to raise that issue in the district court. They didn't, and they're not permitted on appeal to raise that other law. The answer is by default. By default. That's right. So, but going back to where we were. By design. By design. Okay. The answer is California creates a classification of two separate types of employment. You have employment at will, which is a rebuttable presumption, which is governed by Labor Code section 2922, and then you have employment for a specified term, which is governed by Labor Code section 2924, which is mandatory. And the courts clearly, obviously, it's a well-established judicial construction of statutes. Courts clearly must read two provisions together in order, and when they do that, the two requirements for employment for a specified term are as follows. First, employment must be, the employment term must be for one month. And the second requirement is that the employee can only, the employer can only terminate for, and these are very important words, willful breach. Not just a breach. Willful breach. I didn't see the word only in 2924. It doesn't say the word only, but the legislature reached the same result by using the words, I think. Willful breach, habitual neglect of duties, and continued incapacity to perform. Does the 2924 protect the employer? It says even if you've entered into an employment contract for a specified term, the employer may terminate it at any time in the case of willful breach? No, I think the 2924 actually protects the employee. And the reason why it protects the employee is because the employee, when you have a contract for a specified term, you're bounding the employee ostensibly to the term of that contract. And so what the legislature has created in 2924 is to say, look, we're going to allow the employer to terminate for these reasons, which involves reasons of serious misconduct, serious misconduct on the part of the employee. And the remedy, if the employer terminates for any other reasons of the employee, is not just, oh, we forgive $3,600 that we paid for trucking school. So the remedy of the employee would be, I have an action for damages, which is the amount of earnings I would have had had the contract, if it was a specified term contract, gone through to the end of that contract. That's exactly the right that CRST took away from the employee in this case when it specifically put it in its contract that they could terminate for any time and for any reason. And then when you go on to that case, this court in Newilson, in the Newilson case, which we cited in our brief, specifically held, and that's consistent with the argument that I just made, by the way, that it's plainly held that contracts for a specified term, and the court here used, clearly used the word only, permit the employer to terminate for reasons specified in Labor Code section 2924. That's a direct... If an employee would have a cause of action against its employer, which is what you were indicating in your interpretation of 2924, that doesn't make the contract not a term contract. It's just a term contract where the employee has a cause of action if it's terminated for an inappropriate reason. You have to read the two, 2922 and 2924 together, and together what they're saying is you have employment for a specified term, which has to be for more than one month, and in addition to that, where you have an employment for a specified term, these are the only reasons that an employer is allowed to terminate an employee. So when you read them together, there is the twofold requirement, and this Court in the Newilson case plainly held, as I said, that that was the law. Then you go on to the Newilson decision is consistent with the California cases. The first case is the Anderson case, which we cited in our brief. In Anderson, the appellate court held that an employee, that an at-will employment contract existed at a time when the contract was ostensibly for a one-year period of time. It said on it, space, one-year period of time. And the employment contract that exists, but either part, the contract went on to say that either employer or employee could terminate on five days' notice to the other. Now, the Anderson court, in analyzing that contract, and it was a wrongful discharge claim brought by the employee against the employer, focused explicitly. And CRS team below actually noted that in its opposition papers, on the ability of the employer to terminate on five days' notice in determining that the one-year employment contract was actually an employment contract for at-will with respect to the issues there. So you had a one-year employment contract. You had you could be terminated on five days' notice, but in determining whether it was at-will, the employee, the Anderson court specifically said, look, it's because the employer can terminate it at any time, at any reason that makes it at-will. And that's exactly the right that CRST purports to claim here. Now, CRST says we're going to distinguish Anderson because Anderson said or indicated that, well, if there was independent consideration or if the express or implied term permits only for cause, then a different situation might result. But CRST is wrong for the following reasons. First, it ignores that Anderson focused exclusively on the employer's ability to terminate employment at any time, i.e., to determine that what was an at-will employment, what was a one-year employment contract was really an at-will employment. Secondly, the Anderson discussion about independent consideration was in the context of the rebuttable position, Labor Code Section 2922, but not the mandatory provision of Labor Code Section 2924. Fact, the third, and this is what you were addressing earlier, the Court was addressing earlier, the fact that CRST is supposedly forgiving the $360 sum that it supposedly paid to train the two drivers is not the consideration that would be required to support a decision for, to contravene the mandatory language of Section 2924. If you look closely at the language of the statute, and that's what I was referring to earlier, the statute requires willful, 2924, willful misconduct, in other words, a deliberate breach by the employee. It requires habitual conduct, in other words, conduct over and over again, and or it requires continued inability to perform. In other words, the legislature used words that require significant misconduct, not just that I'm late for work one day on the part of the employee. So those kinds of specific, I mean, willful, habitual, continued, are very strong words, demonstrate that Labor Code 2924 was intended to be mandatory and to permit an employee to avoid having, to permit an employer to avoid having to pay employee damages for the remainder of the term, if this was truly correct, for a specified term. The fact that CRST forgives the $3,600 in the, is not even considered a breach. It's been close to the damages that a driver would suffer if CRST should choose to terminate his employee within one month of the term, but that is exactly the remedy that the legislature envisioned under 2924, where it required significant misconduct on the part of the employee for a specified term, and which CRST has obligated. Do you want to sum up? Yeah, I will sum up. They talked about the Guz Court, and I will just, the Guz holding, and I'll just talk about that very briefly. Guz basically said that you have a situation where the trial court granted summary judgment in favor of an employee, and Guz specifically said that the heart of an at-will employment contract is the right of the employer to terminate an employee at any time for any reason. We have that here. Guz specifically said that the implied covenant of good faith and fair dealing requires mutual fairness. We clearly do not have that here. Third, Guz also emphasized that whatever contractual limitations may exist between the employer and the employee, they must be lawful, and that's not present here because 2924 is mandatory. And then we go on to the fact that if, since the contracts are at-will contracts as a matter of law, the California Supreme Court has required independent wrongful conduct in all of its cases where there is at-will employee, and it said specifically that you do not need, that the soliciting or hiring of at-will employees is not actionable, action some independent wrong beyond the fact of hiring, and that's not here. Nowhere is that here. Thank you very much. Okay. I'm sorry, Your Honor. You have 5 minutes, or 3 minutes and 38 seconds. Thank you, Counsel. Okay. May it please the Court. First of all, my opponent has spent a fair amount of time hypothesizing about facts in which my client suddenly stops paying these truck drivers, and I would like to point out to Your Honors that the whole point of going forward with the case would be to elucidate the record, fill the record out, and I think that that's what discovery and should be used for. That's not the kind of argument you can use to support a dismissal like we have here. No, he's just talking about the terms of the contract, what the contract provides. Right. Just a plain reading. But the contract incorporates the handbook, which has not even made it into the record yet. I think the Court is quite correct that the handbook addresses the entire fleet and not a single driver, and that's what the handbook does. The handbook does not address the entire fleet and not a single driver, and that's what the handbook does. Well, putting aside, though, that compensation provision, the contract says can terminate at any time without cause. Right? Right, but on pain of forfeiture of the $3,600. Right, that we would be foregoing. And again, the emphasis is on protecting our investment in taking these people, putting them up, training them, having them learn on our trucks, all of which is a considerable amount of money. And that's really why we went to this contract in the first place. In terms of Section 2924, it is not exclusive, and I think the Court is absolutely correct. It exists so that an employer who does not spell out termination rights on his contract has some guidance in terms of what can or cannot be the case. But when you look at what the Supreme Court said in Goose about how to terminate, how you can structure your termination provisions, it's clear that you have much broader discretion as long as you have mutual assent between the employer and the employee as how to go about doing that. Now, there is a financial limitation, but here the financial limitation, $3,600 in the scheme of things for each of these drivers, and we have a fleet of them, is a substantial amount that we're trying to recoup. I mean, we're in the business of driving trucks, really. And the market forces that buffet us require us to have some ability to recoup all of our investment to bring these people into the market to drive. Now, if you look at the interpretation of the Anderson case, that is a case in which the Court basically said both parties agreed to a contract in which they can expressly walk away at any time. That is the essence of an at-will contract. I mean, we have a different type of contract. We have a front-loaded consideration contract, and the drivers are not free to walk away at any time because they've enjoyed the experience, they've been educated and given a CDL and a profession that they can then, after that first year, use anywhere they want. Hopefully they'll stay with us, but they can go anyplace with that license and drive a truck and make a good living. And there is so that also answers the point about the inability of a driver to drive elsewhere. That's simply not the case. So if there are any further questions, I'd be happy to answer them. If not, I'd like to sum up by asking the Court to reverse and remand this matter. By the way, I would also ask you to deny the motions to strike my 28J papers that we've asked for. I would also like to inform the Court that the Hunt case has now settled, and so the Tenth Circuit appeal has been dismissed. The case has been dismissed. The Court's opinion, which is published in Westlaw, remains a valid opinion. Which case is that, sir? Hunt v. CRST. It was the subject of my 28J letter. It's the district court's preliminary injunction ruling. Thank you very much. The matter just argued will be submitted, and we will go to the next case, which is United States of America v. Isaac Calderon and Richard Eric Macias. Thank you.
judges: Tashima, Bea, Ikuta